**O**

# United States District Court
# Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>vs.<br><br>ERNIE PAUL HERNANDEZ<br>,<br><br>Defendant. | Case № 2:15-CR-00446-ODW-2<br>**ORDER DENYING DEFENDANT'S MOTION PURSUANT TO  18 U.S.C. § 3582(c) FOR COMPASSIONATE RELEASE FROM CUSTODY [DE-235]** |

## I.      INTRODUCTION

Defendant sold a confidential informant ("CI") two 9mm semi-automatic pistols, two 12-gauge shotguns, and more than 100 rounds of ammunition. (Presentence Report ("PSR"), DE 160, ¶¶ 20, 22.)  He also sold a CI two bottles filled with a half-gallon of phencyclidine ("PCP") (Id. at ¶ 18.), and heroin in exchange for $4,300(Id. at ¶ 24). The government and the U.S. Probation Office calculated the guidelines range at 120 to 135 months based on an offense level of 29 and criminal history category III.  Both Probation and the government recommended a sentence

at the mandatory minimum of 120 months.   After defendant's guilty plea, this Court sentenced him to 120 months' incarceration on two counts to be served concurrently.  This sentence was to account for the dangerousness of defendant's conduct,  his physical and mental health challenges, as well as substance abuse difficulties, that he had faced in his life.  (Gov't Sentencing Position, [DE 169], at p. 2-3.)

Here, Hernandez files a motion for compassionate-release, requesting that the unserved balance of his sentence be forgiven and he be released. A drastic remedy. A district court generally "may not modify a term of imprisonment once it has been imposed."  18 U.S.C. § 3582(c); see *Dillon v. United States,* 560 U.S. 817, 824–25 (2010).  Compassionate release is one of the few exceptions to this rule, allowing a court to "reduce the term of imprisonment (and . . . impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)[.]"  18 U.S.C. § 3582(c)(1).

## II.    APPLICABLE LAW

Because this relief is both drastic and permanent, it is subject to strict statutory conditions.   First, a district court can evaluate a defendant's request for compassionate release only "after the defendant has fully exhausted all administrative rights" before the Bureau of Prisons ("BOP").  Specifically: after the defendant has fully exhausted all administrative rights to appeal a failure of the BOP to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.] 18 U.S.C. § 3582(c)(1)(A).  This requirement is mandatory.  *Raia*, 954 F.3d at 597; *Alam*, --- F.3d at ---, 2020 WL 2845694, at *3. From the standpoint of the district court it is

jurisdictional.  See generally *Shaw v. Bank of America Corp.,* 946 F.3d 533, 541 (9th Cir. 2019) ("statutorily-provided exhaustion requirements deprive the court of jurisdiction"); *United States v. Weidenhamer*, No. CR 16-1072-1-PHXROS, 2019 WL 6050264, at *2 (D. Az. Nov. 8, 2019) (citing cases). Second, in evaluating compassionate-release requests, courts must follow both the statute and relevant, binding policy statements.  See *id*.; 28 U.S.C. § 994(t); USSG § 1B1.13.  Pursuant to those authorities, to be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, within the meaning of the statute; and (2) that he is not a danger to the community.  18 U.S.C. § 3582(c)(1)(A).  Specifically, the statute requires that any reduction be "consistent with applicable policy statements issued by the Sentencing Commission"--in this case, USSG § 1B1.13.  *Id*.  As the Supreme Court recognized in *Dillon*, 560 U.S. at 827, because § 3582(c) permits a sentencing reduction only where it is "consistent with applicable policy statements issued by the Sentencing Commission," such policy statements are binding on a court determining eligibility. USSG § 1B1.13 explicitly defines the "extraordinary and compelling reasons" that make a defendant eligible for compassionate release.  See 28 U.S.C. § 994(t).  They include, as relevant here, (1) a "terminal illness"; (2) a serious medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover"; or (3) a defendant who is at least 65 years old, is experiencing a serious deterioration in physical or mental health because of the aging process, and "has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  USSG § 1B1.13 (other grounds omitted).  USSG § 1B1.13, comment. (n.1(A)-(B).  Defendant bears the burden to prove both that he has "exhausted all administrative rights" and that

"extraordinary and compelling reasons" exist to support his motion. 18 U.S.C. § 3582(c)(1)(A); see *United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020) (defendant bears the burden of establishing entitlement to sentencing reduction); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility); see generally *United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue.") Third, even for defendants who are statutorily eligible, compassionate release is a "rare" and "extraordinary" remedy, within district courts' discretion to deny. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, No. 06-CR-151, 2020 WL 1291835, at *2–*3 (W.D.N.C. Mar. 16, 2020). Specifically, "it is a rare case in which health conditions present an 'exceptional reason'" to allow for release where detention would otherwise be warranted. See *United States v. Willis*, 382 F. Supp. 3d 1185, 1188 (D.N.M. 2019) ("most courts treat compassionate release 'due to medical conditions [a]s . . . a rare event."). This reluctance to expansively apply compassionate release is grounded in a concern that any less narrow application would yield significant sentencing disparities. *United States v. Ebbers*, --- F. Supp. 3d. ---, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020).

## III. **DISCUSSION**

Even considering his non-life threatening medical condition, Defendant is not eligible for compassionate release because he also remains a danger to the community. Moreover, under the 18 U.S.C. § 3553(a) factors, the COVID-19 crisis does not justify a permanent, irrevocable reduction in his sentence.

A. **The Fact That COVID-19 Has Infected The Entire Globe is Not an "Extraordinary and Compelling" Reason Which Warrants Release**

Defendant has not demonstrated an eligibility for compassionate release.  As the Third Circuit recently held, "[w]e do not mean to minimize the risks that COVID-19 poses in the federal prison system," but the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison cannot independently justify compassionate release"--particularly given "BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  *Raia*, 954 F.3d at 597.  Here, notwithstanding defendant's health condition, his continuing danger to the community makes him ineligible for compassionate release.

1. **Defendant's Health Condition Does Not Qualify as "Serious."**

Defendant apparently has conditions which have been identified by the CDC as high-risk factors for COVID19, however, they do not meet the definition of a "serious medical condition" per USSG § 1B1.13.  They do not constitute a serious medical condition in that they do not "substantially diminish[es] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover".  Defendant's condition does not meet the criteria for compassionate release. "The First Step Act did not revise the substantive criteria for compassionate release"--criteria that is set forth in the Sentencing Commission's binding "policy statement," USSG 1B1.13.  *Ebbers*, 2020 WL 91399, at *4—*5; 18 U.S.C. § 3582(c)(1)(A).  As courts have recognized, Congress intended that the "Sentencing Commission, not the judiciary, determine what constitutes an appropriate use of the 'compassionate release' provision."  *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting split in authority).  The Sentencing Commission's policy statement--USSG § 1B.1.13--

is thus binding on this Court.  See *Dillon*, 560 U.S. at 827; see, e.g., *United States v. Nasirun,* No. 8:99-CR-367, 2020 WL 686030, at *2 (M.D. Fla. Feb. 11, 2020). Thus, as noted above, a defendant seeking compassionate release must establish that his condition falls within one of the categories listed in the policy statement.  Those categories include, as relevant here, (i) any terminal illness, and (ii) any "serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  USSG § 1B1.13, comment. (n.1(A)).  The general threat of COVID-19--which poses a threat to every non-immune person in the country--does not satisfy these conditions.  "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  *Raia*, 954 F.3d at 597; see also *Eberhart*, 2020 WL 1450745 at *2 ("a reduction of sentence due solely to concerns about the spread of COVID-19 is not consistent with the applicable policy statement of the Sentencing Commission as required by § 3582(c)(1)(A).").  To classify COVID-19 as an extraordinary and compelling reason, by itself, would be inconsistent with the text of the statute and the policy statement.  Moreover, it would have detrimental real-world effects: interfering with BOP's organized anti-COVID-19 efforts, resulting in the inequitable treatment of inmates, and undercutting the strict criteria BOP employs to determine inmates' eligibility for sentence reductions and home confinement.  Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a viral pandemic. However, defendant's serious, chronic health condition is potentially qualifying under the policy statement in light of the risk of infection of COVID-19.  Namely, he suffers from obesity, which is

a chronic medical condition identified by the Centers for Disease Control as a high-risk factor for COVID-19 complication.  See generally Centers for Disease Control, Coronavirus Disease 2019 (COVID-19)--People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extraprecautions/people-at-higher-risk.html (last accessed June 24, 2020).  However, obesity is not a condition "from which defendant is not expected to recover.

Additionally, defendant's medical records show that he suffers from epilepsy and he has a documented history of mental health issues.  (See PSR ¶¶ 8187.)  These conditions are not listed on the CDC's website as conditions that pose a likelihood of a more serious case of COVID-19, but they likely are a detriment to defendant's overall health.  Defendant's medical condition(s) alone, however, are not enough to warrant his release from prison.

2. **Defendant's Poses a Continuing Danger to The Community Which Makes Him Ineligible For Compassionate Release**

Serious illness is not the only requirement for compassionate release eligibility; a defendant must also demonstrate that he is "not a danger to the safety of any other person or to the community."  USSG § 1B1.13(2).  Defendant cannot make that showing, and thus he is ineligible for a reduced sentence.   Specifically, this Court may not reduce a defendant's sentence unless it finds that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."  USSG § 1B1.13; see *United States v. Gotti*, No. 02-CR743, 2020 WL 497987, at *6 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); accord *United States v. Urso*, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019); *United States v. Applewhite,* No. 08-CR-60037, 2020 WL 137452, at *2 (D.

Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-old inmate based on danger).  The record here supports a similar finding.  Defendant poses a very real danger to the community.  Defendant sold a large quantity of PCP to a CI – a drug that is highly toxic.   Then he sold four firearms and a large amount of ammunition to a CI.  The prevalence of firearms, especially those sold on the black market, present a significant danger to the safety of others.  Defendant plans to live with his mother (mot. at 7), which appears to be where he was living when he committed the instant offense (PSR ¶ 77). Obviously, residing with his mother has not proven to be an effective deterrent to his criminality.  Clearly, trafficking in drugs and weapons presents a grave danger to the community.  *United States v. Hir,* 517 F.3d 1081, 1088 (9th Cir. 2008) ("community," within the meaning of 18 U.S.C. § 3142, is not necessarily confined to local geography).   All California residents are currently required to shelter in place and "heed the current State public health directives" to avoid the spread of COVID19.  California Executive Order N-33-20 (March 19, 2020), available at https://covid19.ca.gov/img/Executive-Order-N-33-20.pdf.  Such rules, though enforceable by peace officers, rely largely on voluntary compliance.  A person who ignores such rules could increase infection rates, leading to citizens' severe illness and death.  Defendant's history demonstrate he has not been inclined to follow the law and living with his mother provides no assurance that he will carefully abide by the rules if released.

## IV.  CONCLUSION

Considering all of the foregoing, the Court concludes Defendant has not established the criteria warranting compassionate release, and as a result, his request is hereby **DENIED**.

IT IS SO ORDERED.

DATED:   November 9, 2020

_____

OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE